IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-01084-REB-MJW

WILLIAM ABEGG,

Plaintiff,

v.

ADAMS/ARAPAHOE SCHOOL DISTRICT J8/AURORA PUBLIC SCHOOLS,
JOHN BERRY, Superintendent, in his personal, professional capacity,
JILL LLITERAS, Principal, in her personal and professional capacity,
TRUDY WICKS, School Security in her personal and professional capacity, and
KATHLEEN HOSTETLER, Legal Counsel, in her personal and professional capacity,

Defendants.

---

**RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT
(Docket No. 25)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**


        This case was referred to this court pursuant to an Order Referring Case issued

by Judge Robert E. Blackburn on July 2, 2012.  (Docket No. 13).

## PLAINTIFF'S ALLEGATIONS

        The operative pleading is the Second Amended Complaint (Docket No. 10) in

which the pro se plaintiff, William Abegg, asserts the following.  On January 19, 2012,

plaintiff and his then nine-year old son Joseph were at Fulton Elementary School to pick

up plaintiff's then six-year old son Joshua.  Both Joseph and Joshua have disabilities

and Individualized Education Programs (IEPs).  Two students from West Middle School,

who were older and larger than Joseph, were trying, without success, to "strong-arm"
Joseph out of his "motorcycle(mini-chopper)" on which he was sitting.  (Docket No. 6 at
5).  They then called Joseph racially-motivated hate names and began pushing and
shoving Joseph.  This was not the first instance of bullying.  Plaintiff noticed the on-
going conflict between Joseph and the older children and immediately ran to that
location, hoping to avoid any injuries to the children.  The two older boys noticed plaintiff
and went to a teacher, Mr. Underland, who was on the grounds.  After briefly talking
with Joseph, plaintiff went to the area where Mr. Underland and the two children were
located, and the two children immediately ran away.  Plaintiff yelled, "Hey come here,"
to the two children.  Staff then became involved, and without questioning plaintiff about
the incident, immediately said to the plaintiff, "get yourF###ing ass off school property
and take your bastard as [sic] kids with you."  (Docket No. 10 at 6).

The next day, plaintiff received a school directive from defendant principal Jill
Literas and defendant director of security Trudy Wicks excluding plaintiff from entering
and being on the school's premises.  (Pl.'s Exhibit B, Docket No. 1 at 15, Docket No. 8
at 18).[1]  "The directives" threatened criminal prosecution for any violation and stated

---

[1]In his Second Amended Complaint, plaintiff refers to Exhibit B, which is attached
to his original Complaint (Docket No. 1 at 15) and First Amended Complaint (Docket no.
8 at 18).  Exhibit B is the letter dated January 20, 2012, to plaintiff from Wicks.  The
letter notes that plaintiff was served with a No Trespassing Directive on December 15,
2010, "due to unsafe behaviors and communication with the staff at Fulton Elementary."
(Docket No. 1 at 15).  That directive was lifted on January 11, 2011, due to plaintiff's
"cooperation on improving [his] behaviors and communication with school staff."
(Docket No. 1 at 15).  However, the letter further states that "[o]n January 19, 2012,
while at the school to pick up your child, you confronted another student on the
playground who your son alleged call [sic] him a 'butthead'.  The teacher contacted you
and asked you to leave.  After being argumentative with the teacher you did leave, but
as you were leaving you called the student a 'wetback'."  (Docket No. 1 at 15).  Plaintiff

plaintiff could no longer speak to any parents or school staff without the principal's permission.  Plaintiff was not given notice or an opportunity to contest the factual assertions.

On February 21 and March 3, 2012, Literas and Wicks filed trespass claims against plaintiff, asserting that he was in violation of the directive.  On June 6, 2012, plaintiff was convicted of a charge of trespassing in Aurora Municipal Court.

"When [plaintiff was] subsequently unable to attend teacher conferences and IEP meetings held by the school, the schools [sic] staff threatened to call law enforcement officials and remove [plaintiff] from the school grounds, if he attempted to attend." (Docket No. 6 at 10).

Plaintiff raises three claims for relief.  The first two claims allege due process violations, and the third alleges a violation of the plaintiff's First Amendment right to freedom of speech.  He seeks injunctive relief requiring the removal of all records and directives issued without a proper due process hearing and barring further retaliation resulting from the trespass directive as well as $100,000 compensatory and punitive damages for the intentional infliction of mental distress and loss of reputation, attorney

---

was informed that until further notice, he was prohibited from going onto the grounds of any Aurora Public School building unless he is contacted and requested to be at a District school or support site for legitimate school business, which includes prearranged meetings with his child's teacher or the principal.  In addition, plaintiff was allowed to be on the sidewalk in front of the school to observe his child enter the building for the school day and to wait for the child at the end of the school day.  Plaintiff was not to contact any students or staff during drop off and pick up.  Finally, law enforcement officers would be contacted if plaintiff's inappropriate behavior continued and if plaintiff did not abide by the directive, even if he had left the property, and criminal trespass and possibly other charges could be filed against plaintiff.  (Docket No. 1 at 15).

fees, and costs.

## DEFENDANTS' MOTION TO DISMISS

Now before the court for a report and recommendation is the defendants' Motion to Dismiss Second Amended Complaint (Docket No. 25) in which the defendants seek dismissal pursuant to Fed. R. Civ. P. 12(b)(6) on the following grounds:  the individual defendants and the District did not deprive plaintiff of his substantive or procedural due process rights, and plaintiff has failed to state a claim of First Amendment retaliation against the individual defendants and the District.  Plaintiff filed an "Answer" to the motion (Docket No. 30), and defendants filed a Reply in support of their motion.  The court has carefully considered all of these motion papers as well as the court file and applicable Federal Rules of Civil Procedure and case law.  The court now being fully informed makes the following findings, conclusions, and recommendation that the motion be granted.

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'"  Cutter v. RailAmerica, Inc., 2008 WL 163016, at *2 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do . . . ." <u>Bell Atlantic</u>

<u>Corp.</u>, 550 U.S. at 555 (citations omitted).  "Factual allegations must be enough to raise

a right to relief above the speculative level." <u>Id.</u>  "[A] plaintiff must 'nudge [] [his] claims

across the line from conceivable to plausible' in order to survive a motion to dismiss. . . .

Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts

in support of the pleaded claims is insufficient; the complaint must give the court reason

to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for

*these* claims." <u>Ridge at Red Hawk, L.L.C. v. Schneider</u>, 493 F.3d 1174, 1177 (10th Cir.

2007) (quoting <u>Bell Atlantic Corp.</u>, 127 S. Ct. at 1974).

       The Tenth Circuit Court of Appeals has held "that plausibility refers 'to the scope

of the allegations in a complaint: if they are so general that they encompass a wide

swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims

across the line from conceivable to plausible.'" <u>Khalik v. United Air Lines</u>, 671 F.3d

1188, 1191 (10th Cir. 2012).  The Circuit court has further "noted that '[t]he nature

and specificity of the allegations required to state a plausible claim will vary based

on context.'" <u>Id.</u>  The court thus "concluded the *Twombly/Iqbal* standard is 'a middle

ground between heightened fact pleading, which is expressly rejected, and

allowing complaints that are no more than labels and conclusions or a formulaic

recitation of the elements of a cause of action, which the Court stated will not do.'"

<u>Id.</u>

       For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must

accept all well-pled factual allegations in the complaint as true and resolve all

reasonable inferences in the plaintiff's favor.  <u>Morse v. Regents of the Univ. of Colo.</u>,

154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32

(10th Cir. 1996).  However, "when legal conclusions are involved in the complaint

'the tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to [those] conclusions' . . . ."  Khalik, 671 F.3d at 1190

(quoting Iqbal, 129 S. Ct. at 1949)).  "Accordingly, in examining a complaint under

Rule 12(b)(6), [the court] will disregard conclusory statements and look only to

whether the remaining, factual allegations plausibly suggest the defendant is

liable."  Id. at 1191.

Pursuant to Fed. R. Civ. P. 12(d), "[i]f, on motion under Rule 12(b)(6) . . . ,

matters outside the pleadings are presented to and not excluded by the court, the

motion must be treated as one for summary judgment under Rule 56.  All parties must

be given a reasonable opportunity to present all the material that is pertinent to the

motion."  "However, notwithstanding the usual rule that a court should consider no

evidence beyond the pleadings in a Rule 12(b)(6) motion to dismiss, 'the district court

may consider documents referred to in the complaint if the documents are central to the

plaintiff's claim and the parties do not dispute the documents' authenticity.'"  Alvardo v.

KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting Jacobsen v. Deseret

Book Co., 287 F.3d 936, 941 (10th Cir. 2002)).  In addition, the court may take judicial

notice of its own files and records, as well as facts which are a matter of public record,

without converting the motion to dismiss into a motion for summary judgment.  Grynberg

v. Koch Gateway Pipeline Co., 390 F.3d 1276, 1278 n.1 (10th Cir. 2004).

Here, two documents are attached to defendants' motion to dismiss.  The first is

a letter to plaintiff dated February 23, 2012, from defendant legal counsel Kathleen

Hostetler reinstating the no trespassing directive (Defs.' Ex. 1, Docket No. 25-1).

While the plaintiff's Second Amended Complaint is not a model of clarity, it

appears that he may have referred to the February 23 letter in that pleading when

he stated that "[t]he trespass directive was issued with the intent that it was a final

document and indicated that there was no avenues of redress our [sic] appeal, this

paper violated the parents' [sic] right to petition the government for redress of

grievances **and was overseen by The Superintendent John Berry on February 23,**

**2012**."  (Docket No. 10 at 2, ¶ 3) (emphasis added).  On the February 23 letter,

Berry is the first name on the carbon copy list.  (Docket No. 25-1 at 2 - list of cc

recipients).  Plaintiff has not challenged the authenticity of this letter.  While this

document would lend further support to the court's findings below concerning

whether plaintiff has a property or liberty interest in accessing school grounds,[2] the

document was not relied upon in reaching today's recommendation.

The second document attached to the defendants' motion is the City of

Aurora Municipal Court Disposition Screen Reports concerning the trespassing

charges referenced in the plaintiff's pleading.  (Defs.' Ex. 2, Docket No. 25-1).

Plaintiff does not specifically refer to this document in his pleading, but he does

reference the trespassing charges and one trespassing conviction in that court.

Plaintiff has not challenged the authenticity of this document, and the facts

concerning plaintiff's trespass charges and conviction are a matter of public record.

It may thus be considered by the court here without converting defendants' motion

---

[2]For example, the letter details the means of communication plaintiff may utilize to contact and/or meet with his child's teachers.  (Docket No. 25-1 at 2).

into a motion for summary judgment.  Nevertheless, this document is not crucial to today's recommendation, and the court has not found it necessary to consider it when making its recommendation.

Since the plaintiff is not an attorney, his pleadings and other papers have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . .  At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant."  Id.

### Due Process Claims

In order to state a claim for relief under § 1983, plaintiff must allege he was deprived of a right secured under the Constitution or federal law and that such deprivation was committed by a person acting under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988).  Thus, the initial question here is whether plaintiff has alleged a deprivation of a constitutional right.  See County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998) ("[a]s in any action under § 1983, the first step is to identify the exact contours of the underlying right said to have been violated.").  Here, the plaintiff has failed to do so.

The Due Process Clause states, "No State shall ... deprive any person of life,

9

liberty, or property, without due process of law." U.S. Const. amend. XIV § 1.  In order

to state a due process claim, plaintiff must allege the deprivation of a protected property

or liberty interest.  See Steffey v. Orman, 461 F.3d 1218, 1221 (10th Cir. 2006) ("A due

process claim under the Fourteenth Amendment can only be maintained where there

exists a constitutionally cognizable liberty or property interest with which the state has

interfered.").  A protected interest in liberty or property may have its source in either

federal or state law.  See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454,

460 (1989) ("Protected liberty interests may arise from two sources—the Due Process

Clause itself and the laws of the States.") (internal quotation marks omitted).  I find that

plaintiff here has failed to alleged the requisite deprivation of a protected property or

liberty interest.

"Courts have held that members of the general public have neither a liberty nor

property interest in being present on a school campus, and absent such an interest,

they are not entitled to the procedural due process protections of the Fourteenth

Amendment."  Lankster v. Williams, 2012 WL 950096, at *3 (S.D. Ala. Mar. 5, 2012)

(citing cases), adopted by 2012 WL 952269 (S.D. Ala. Mar. 20, 2012) (citing cases).

Moreover, courts have held, and I find likewise, that parents do not have a constitutional

right to access school premises.  Id. at *4 (citing Porter v. Duval County, Sch. Bd., 406

Fed. Appx. 460, 462 (11th Cir. 2010); Lovern v. Edwards, 190 F.3d 648, 655-56 (4th Cir.

1999); Holbach v. Jenkins, 2009 U.S. Dist. Lexis 67525, *15-16 (D.N.D. July 15, 2009));

Ritchie v. Coldwater Comm. Schs., 2012 WL 2862037, at *16 (W.D. Mich. July 11,

2012) ("In the context of due process claims, to this Court's knowledge, every court that

has considered the issue has concluded that citizens, including parents, do not have a

10

liberty or property interest in accessing school property.") (citing cases); <u>Mayberry v. Independent Sch. Dist. No. 1 of Tulsa County, Okla.</u>, 2008 WL 5070703, at *4 (N.D. Okla. Nov. 21, 2008) ("Many courts have held that parents have no constitutional right to be on school premises.") (citing cases). "School officials have the authority to control students and personnel on school property, and also have the authority and responsibility for assuring that parents and third parties conduct themselves appropriately while on school property." <u>Lovern</u>, 190 F.3d at 655. "A school administration's authority to control activities on school property includes preventing parents access to the premises when necessary to maintain order and prevent disruptions to the educational environment." <u>Madrid v. Anthony</u>, 510 F. Supp.2d 425, (S.D. Tex. 2007). "In the educational context, courts-especially federal ones-are not the appropriate forum for resolving daily conflicts arising from the operation of school systems." <u>Mayberry</u>, 2008 WL 5070703, at *4 (citing <u>Cunningham v. Lenape Reg. High Dist. Bd. of Ed.</u>, 492 F. Supp.2d 439, 450 (D.N.J. 2007)).

The court notes that plaintiff cites <u>Troxel v. Granville</u>, 530 U.S. 57 (2000), in his pleading (Docket No. 10 at 8) as support for his apparent argument that because he has the right to participate in the education of his children, which he argues is part of the right to control the education of one's child identified by the Supreme Court, he has a protected liberty right to access school property. This court, however, agrees with the finding in <u>Mejia v. Holt Public Schs.</u>, 2002 WL 1492205 (W.D. Mich. Mar. 12, 2002), that plaintiff's argument "is based upon a strained reading of <u>Troxel</u>. While <u>Troxel</u> does mention that parents have the right to direct and control the education of their children (albeit the case does not, itself, involve the education of a child), nothing in that decision

11

suggests that it includes the right to go onto school property, even if doing so is necessary to participate in the child's education." Id. at *5.  "The right of a parent to direct his child's education is 'limited in scope.'" Id. at *6 (quoting Swanson v. Guthrie Indep. Sch. Dist., 135 F.3d 694, 699 (10th Cir. 1998)).

This court finds that "the right of parents to direct and control the education of their children does not include the right to go onto school property to participate in the child's education."  Ritchie, 2012 WL 2862037, at *17 (citing Mejia v. Holt Public Schs., 2002 WL 1492205, at *6).  "[A]s a practical matter, physical exclusion from school property does not preclude a parent from communicating with his child's teachers or school authorities about issues involving the child, nor does it hinder a parent's ability to make informed decisions relating to the child's education because there are always alternate channels of communication available, such as . . . telephone, e-mail, or notes to the teacher or administrators."  Mejia, 2002 WL 1492205, at *6.  In fact, the directive dated January 20, 2012, which plaintiff specifically referenced in his Second Amended Complaint and attached to his original Complaint (see Docket No. 1 at 15) and First Amended Complaint (see Docket No. 8 at 18), does not preclude all communication by plaintiff with his child's teachers or the principal.  Instead, it merely states in pertinent part:

> . . . Until further notice, you are hereby notified that you are prohibited from coming onto the grounds of any Aurora Public School building unless you are contacted and requested to be at a District school or support site for legitimate school business.
>
> Legitimate school business includes prearranged meetings with your child's teacher or the building principal.
>
> You are allowed to be on the sidewalk in the front of Fulton Elementary to

12

> observe your child enter the building for the school day and to wait for
> your child at the end of the school day.
>
> You will not contact any students or staff during drop off and pick up of
> your child. . . .

(Docket No. 1 at 15, Docket No. 8 at 18).  This directive contains no restrictions on

telephone, mail, or electronic mail communications with the teachers, principal, or other

school staff.

The court further notes that in his pleading, the plaintiff claims the Colorado

Constitution affords a parent the right to access his child's classroom and/or school-

sponsored activities.  (See Docket No. 10 at 8, ¶ 8).  Plaintiff, however, has not cited

which provision of the Colorado Constitution affords parents such rights.  Furthermore,

a state-created interest is not protected by the procedural component of the Due

Process Clause unless the interest is an entitlement—that is, unless the asserted right

to property or liberty is *mandated* by state law when specified substantive predicates

exist.  See Thompson, 490 U.S. at 460.  Plaintiff has made no showing that any

purported state-created interest here is mandated by state law.  In fact, as defendants

have pointed out in their motion, Colorado law allows public officials to set rules for how

persons conduct themselves in public buildings, and a violation of such rules can

constitute a violation of criminal law, see § 18-9-117(1), C.R.S., and allows school

officials who are charged with maintaining order on the premises to direct certain people

to leave, see § 18-9-109(3), C.R.S. ("No person shall willfully refuse or fail to leave the

property of or any building or other facility used by any educational institution upon

being requested to do so by the chief administrative officer, his designee charged with

maintaining order on the school premises and in its facilities, or a dean of such

13

educational institution, if such person is committing, threatens to commit, or incites

others to commit any act which would disrupt, impair, interfere with, or obstruct the

lawful missions, processes, procedures, or functions of the institution.").

Reading the Second Amended Complaint liberally, it appears plaintiff may very

well be asserting a substantive due process violation as well as a procedural due

process violation.  "[T]he Due Process Clause is not a guarantee against incorrect or ill-

advised government decisions."  Camuglia v. City of Albuquerque, 448 F.3d 1214, 1222

(10th Cir.2006) (internal quotation omitted).  An arbitrary deprivation of a liberty or

property right may violate the substantive component of the Due Process Clause if the

arbitrariness is extreme.  Id.  "The plaintiff must demonstrate a degree of

outrageousness and a magnitude of potential or actual harm that is truly conscience

shocking."  Id. (internal quotation marks omitted).  A high level of outrageousness is

required.  See id. at 1223.  As the Tenth Circuit Court of Appeals has stated:

> The ultimate standard for determining whether there has been a
> substantive due process violation is whether the challenged government
> action shocks the conscience of federal judges. It is well settled that
> negligence is not sufficient to shock the conscience. In addition, a plaintiff
> must do more than show that the government actor intentionally or
> recklessly caused injury to the plaintiff by abusing or misusing government
> power.

See id. at 1222 (internal quotation marks omitted).  These limits reflect the need to

restrict the scope of substantive due process claims, the concern that § 1983 not

replace state tort law, and the need to give deference to local policymaking bodies'

decisions relating to public safety.  See id. at 1223.  Considered in light of the above

standards, even if there were a protected liberty or property interest here, this court

finds that the adverse actions of which plaintiffs complain do not rise to the level of

14

conscience-shocking behavior.

In sum, this court finds that even accepting the factual allegations pled in the
Second Amended Complaint as true and resolving all reasonable inferences in the
plaintiff's favor, his due process claims against both the District and the individual
defendants should be dismissed for failure to state a claim upon which relief can be
granted.

### First Amendment Claim

In Claim Three, plaintiff seems to be alleging a that the no-trespassing directive
was issued in retaliation for his expression at his son's school about the school's lack of
safety and the on-going bullying of his children.  (Docket No. 10 at 12, 16).  "To
establish a First Amendment retaliation claim, a plaintiff must show that (1) he was
engaged in constitutionally protected activity, (2) the government's actions caused him
injury that would chill a person of ordinary firmness from continuing to engage in that
activity, and (3) the government's actions were substantially motivated as a response to
his constitutionally protected conduct." Nielander v. Board of County. Comm'rs, 582
F.3d 1155, 1165 (10th Cir. 2009).  To prevail on the causation element of a claim for
retaliation, plaintiff "must prove that 'but for' the retaliatory motive, the incidents to which
he refers . . . would not have taken place." Smith v. Maschner, 899 F.2d 940, 949-50
(10th Cir. 1990)).  That is, "it is imperative that [a] plaintiff's pleading be factual and not
conclusory.  Mere allegations of constitutional retaliation will not suffice; plaintiff[] must
rather allege specific facts showing retaliation because of the exercise of the [plaintiff's]
constitutional rights." Frazier v. Dubois, 922 F.2d 560, 562 n. 1 (10th Cir.1990).  Here,
plaintiff's pleading on the causation element is conclusory, rather than factual.  He has

15

not adequately alleged that the defendants' alleged retaliatory motives were the "but for" cause of their actions.   Therefore, his third claim for relief should be dismissed.

**Qualified Immunity**

Defendants assert that they are entitled to qualified immunity from suit on plaintiff's claims.   Government officials are entitled to qualified immunity from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights which a reasonable person in their position would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).   A court evaluating a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether that right was clearly established at the time of the alleged violation.   See Pearson v. Callahan, 555 U.S. 223, 232 (2009).   Having concluded above that plaintiff has failed to state a valid § 1983 claim, "the inquiry ends and the [indvidual defendants are] entitled to qualified immunity."   Wilder v. Turner, 490 F.3d 810, 813 (10th Cir. 2007) (citation omitted).

**WHEREFORE**, for the foregoing reasons, it is hereby

**RECOMMENDED** that the defendants' Motion to Dismiss Second Amended Complaint (Docket No. 25) be **GRANTED**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need**

**not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date:  October 9, 2012                          s/ Michael J. Watanabe
      Denver, Colorado                      Michael J. Watanabe
                                     United States Magistrate Judge